Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:    (650) 849-6600
Facsimile:    (650) 849-6666

Justin Hasford (*pro hac vice* to be filed)
justin.hasford@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC  20001
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

*Attorneys for Plaintiff*
*Mabē, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MABĒ, LLC<br><br>     Plaintiff,<br><br>  v.<br><br>THE ERGO BABY CARRIER, INC.<br><br>     Defendants. | CASE NO.<br><br>**COMPLAINT FOR FALSE ADVERTISING, UNFAIR COMPETITION, AND TRADE LIBEL**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiff, Mabē, LLC ("Mabē" or "Plaintiff"), by and through undersigned counsel, alleges against Defendant, The Ergo Baby Carrier, Inc. ("Ergobaby" or "Defendant"), as follows:

**NATURE OF THE ACTION**

1.      This is an action for false advertising, false and/or misleading representations or descriptions of facts, unfair competition, and trade libel under federal, state, and common law. Ergobaby has intentionally made false and/or misleading representations of fact disparaging Mabē's baby carriers and regarding the alleged superiority of Ergobaby's baby carriers. Ergobaby has engaged in and, on information and belief, is still engaging in, defamatory advertising campaigns to mislead consumers and retailers to believe that Mabē's baby carrier, the Monarch Carrier, is inferior in safety, baby head and neck support, fit, baby hip placement, and overall quality compared to Ergobaby's baby carriers. Making matters worse, Ergobaby appears to have launched its defamatory advertising campaigns as retribution for Mabē defending itself against a baseless patent infringement brought by Ergobaby in the U.S. District Court for the District of Idaho.

2.      Through a series of sponsored advertisements and other content on social media platforms, Defendant, its agents, and/or representatives have made misleading and false statements that disparage Mabē's Monarch Carrier, including by falsely and/or misleadingly stating or implying that the Monarch Carrier is of poor quality, is not safe for newborn babies, and does not support proper hip placement for babies. These statements are harmful to Mabē's goodwill, reputation, and brand because they directly attack critical factors that parents and caregivers consider when selecting a baby carrier. Ergobaby's actions constitute false advertising, false and/or misleading representations or descriptions of facts, unfair competition, and trade libel. Upon information and belief, Defendant's false advertising, false and/or misleading representations or descriptions of fact, unfair competition, and trade libel are likely to and will inevitably demean, disparage and/or tarnish Mabē's goodwill and business reputation, harm Mabē's credibility in the trade, and reduce the demand for Mabē's products.

3.      As a result of Ergobaby's unlawful actions, Mabē seeks a permanent injunction, damages (including the cost of corrective advertising), costs, attorneys' fees, punitive damages, declaratory relief, and other relief as more fully set forth below.

## THE PARTIES

4.      Mabē is an Idaho limited liability company with a principal place of business at 1463 N. 825 E, Shelley, Idaho 83274-5055.

5.      Upon information and belief, Defendant Ergobaby is a Hawaii corporation with a principal place of business at 2041 East Street, Suite 831, Concord, California 94520.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendant because, Defendant is headquartered in this District and the state of California, and among other things, transacts business in this District, purposefully avails itself of the rights and benefits of California law, and maintains substantial, continuous, and systematic contact with the state of California, and in particular this District. Upon information and belief, Ergobaby also (1) enjoys substantial income in California, including through its false and misleading statements and (2) disseminated the false and misleading statements about Mabē in this District, including through the Facebook and Instagram platforms owned by Meta, which has its headquarters in this District (Menlo Park, California).

7.      Venue is proper in this District under 28 U.S.C. § 1391 because Ergobaby resides or may be found in this District and a substantial part of the events giving rise to these claims occurred in this District.

## DIVISIONAL ASSIGNMENT

8.      Pursuant to Civil Local Rule 3-2(c) and General Order No. 44, this case should be assigned to either the San Francisco Division or the Oakland Division because a substantial part of the events or omissions giving rise to the claims occurred in Contra Costa County.

## FACTUAL BACKGROUND

**A.      Mabē and Its Baby Carriers**

9.      Mabē is a small business founded by a husband-and-wife duo out of Southeast Idaho. Mabē focuses on creating products that best serve and help parents navigate parenthood.

COMPLAINT

10.    Mabē came to life when Allie Taylor, one of Mabē's co-founders, first became a mother in 2022 and could not find a stylish and simple-to-use baby carrier/wrap that was safe, kept her baby close to her body, and allowed her to have both hands free.

11.    Mabē developed the Monarch Carrier, as it exists today, over time, incorporating its own material selections, construction, and design features, including refinements to fit and overall usability.

12.    Mabē's Monarch Carrier was designed to be chic, functional, and safe for babies by providing parents and caregivers with the freedom to continue with their daily activities, hobbies, and work, while still keeping their babies close to them.

 

13.    Mabē's Monarch Carrier is also carefully and thoughtfully designed to consider baby's hip safety. The Monarch Carrier was designed using International Hip Dysplasia Institute guidelines to ensure that the baby's weight is supported in the recommended "M" position. To achieve this recommended positioning, Mabē designed the Monarch Carrier with adjustable waist and back straps to achieve proper positioning based on the baby's size and development.

4










14.     As parents themselves, Mabē's cofounders understand the importance of product safety. Mabē's Monarch Carrier undergoes vigorous quality testing and is made of breathable materials like 100% cotton or a cotton/linen blend, depending on the carrier color. Mabē's Monarch Carrier and other products exceed applicable industry standards for textiles and baby carriers. Mabē's products are Consumer Product Safety Commission and Consumer Product Safety Improvement Act compliant and its Monarch Carrier has passed the most current ASTM F2236-24 for soft structured infant carriers.

15.     The Monarch Carrier has also been tested for and passed or complies with various codes, regulations, and laws, including:  U.S. Code of Federal Regulations Title 16 Part 1226 (safety standard for soft infant carriers), U.S. Code of Federal Regulations Title 16 Part 1500.50, 1500.51, 1500.53 (use and abuse), U.S. Code of Federal Regulations Title 16 Part 1500.49 (technical requirements for determining a sharp metal or glass edge in toys and other articles intended for use by children under 8 years of age), U.S. Code of Federal Regulations Title 16 Part 1500.48 (technical requirements for determining a sharp point in toys and other articles intended for use by children under 8 years of age), U.S. Code of Federal Regulations Title 16 Part 1501 (method for identifying toys and other articles intended for use by children under 3 years of age which present choking, aspiration, or ingestion hazards because of small parts), Consumer Product Safety Act (CPSA) Section 14(a)(5)/Consumer Product Safety Improvement Act (CPSIA) 2008 Section 103 (tracking labels for children's products), U.S. Code of Federal Regulations Title 16 Part 1610 (flammability of clothing textile), California Proposition 65 for Child Care Articles on phthalate content, California Proposition 65 for Child Care Articles on total lead and cadmium content, U.S. Code of Federal Regulations Title 16 Part 1303 (total lead content), U.S. Consumer Product Safety Improvement Act Title I, Section 101/15 United States Code 1278(a) (total lead content substrates), U.S. Consumer Product Safety Improvement Act Title I, Section 108; U.S. Code of Federal Regulations Title 16 Part 1307 (standards for child care articles containing phthalates), U.S. Code of Federal Regulations Title 19 Part 134 (country of origin marking), U.S. Code of Federal Regulations Title 16 Part 1130 (consumer registration of durable infant or toddler products), CEN/TR 16512:2015 Child Use and Care Articles Guidelines for the Safety of Children's Slings.

COMPLAINT

16.    The Monarch Carrier has been also tested for and passed or complies with various international rules and regulations, including those from the European Union, the United Kingdom, and Northern Ireland (*e.g.*, EN 71-2:2020 (toy flammability); EN 71-3:2019+A2:2024 (migration of certain elements)), and from Canada (including Textile Labelling Act; R.S.C., 1985, c. T (label review), CAN/CGSB 4.2 No. 27.5 (textile test methods - flame resistance), SOR/2011-17: Item 23 (heavy elements), SOR/2018-83 (total lead), SOR/2016-188 (phthalates)).

17.    Mabē also invests meaningful resources to ensure that parents and caregivers correctly and safely carry their babies in the Monarch Carrier. The Monarch Carrier comes with a detailed instruction manual that discusses proper use of the carrier and positioning of babies in the carrier, among other things. In addition, across social media platforms, Mabē provides various tutorial videos on how to carry a baby in the Monarch Carrier to ensure that baby is secure and in the correct "M" hip position.

  



18.     Mabē's website also has a dedicated "How To" subpage[1] that contains drop down menus with video tutorials on how to safely use the Monarch Carrier. And Mabē provides a free, personalized and live baby carrying consultation with a certified babywearing specialist.



19.     Mabē's focus on quality and safety has not gone unnoticed by consumers. Since its launch in 2022, Mabē has experienced significant growth nationwide. Mabē sells its Monarch Carrier directly to consumers through its own website <https://mabeproducts.com/>, and the

---

[1] https://mabeproducts.com/pages/how-to-use-1

COMPLAINT

Monarch Carrier is also available through retailers like Target, Nordstrom, Amazon, Chicke Baby + Kids, Babylist, Roolee, and Once Upon a Time Children's.

20. Since launching the Monarch Carrier, Mabē has expanded its product line to include the Monarch Toddler Sling and accessories to attach to the Carrier or Sling.

21. Mabē maintains a robust and vibrant social media following with 164,000 followers on Instagram, 36,300 followers on TikTok, and 6,100 followers on Facebook.

22. Customers are outspoken and rave about how much they love Mabē's Monarch Carrier; Mabē has received strong and positive social media engagement with customers sharing positive experiences with the Mabē Monarch Carrier and making posts featuring the Monarch Carrier.

**B.     Ergobaby and its False and/or Misleading Advertising Campaigns**

23. Upon information and belief, Defendant sells various types of baby carriers, including the Embrace Newborn Carrier, the Omni Classic Carrier, and the Omni Deluxe Carrier, in the United States and in other countries.

24. On January 14, 2026, Ergobaby filed suit against Mabē alleging patent infringement in the United States District Court for the District of Idaho (the "Patent Case"). On March 19, 2026, Mabē filed a motion requesting that Ergobaby be required to post a bond in the Patent Case under the Idaho Bad Faith Assertions of Patent Infringement Act to protect Mabē from the substantial costs associated with defending itself against Ergobaby's bad faith, baseless, and misguided assertions and claims.

25. That same day, Ergobaby posted and/or promoted sponsored advertisements of an unknown Ergobaby agent, representative, brand ambassador, or influencer making unverified and unsupported claims about Mabē's Monarch Carrier. These advertisements are associated with and have been promoted by Ergobaby's official social media accounts, including at least Facebook and Instagram. *See* Ex. A.

26. Ergobaby's sponsored advertisements make multiple false and/or misleading representations. First, Ergobaby claims that Mabē's Monarch Carrier does not have the right fit to support the hips and spine of a baby. The advertisements, which are one-on-one comparisons

9

between Ergobaby's carrier and Mabē's Monarch Baby Carrier, begin by saying that the "[r]ight fit in a carrier is so important for their hips and for their spine; it's not something that you play around with" and then go on to detail various reasons that Mabē's Monarch Baby Carrier is allegedly inferior to Ergobaby's carrier or why Ergobaby's carrier is allegedly superior to Mabē's Monarch Baby Carrier. For example, the advertisements present a comparison table like the one below:



27.     Next, Ergobaby claims that Mabē's Monarch Carrier is not "newborn ready" and that Mabē's Monarch Carrier does not adequately support a baby's head and neck. The advertisements make claims like: "Not all baby carriers are newborn ready. Mabē has no adjustable back panel, so the fit does not work well for this stage. Ergobaby does. Mabē also have very little support around the baby's head and neck and babies nap in carriers all the time. Ergobaby's cushioning actually supports them." The comparison table continues and appears similar to the below:



28.     Then Ergobaby claims that Mabē's Monarch Carrier is poor quality. The advertisements claim that the "exact same" carrier as Mabē's Monarch Carrier is sold on Alibaba, concluding that "I can just tell holding these two carriers in hand that Ergobaby is clearly the higher quality one." The advertisement videos are followed by the continued comparison chart:



COMPLAINT

29.     Lastly, Ergobaby claims that Mabē does not invest in the safety or quality of its products, implying that Mabē's Monarch Carrier is unsafe and poor quality. Some of the advertisements state: "There is just no investment being made in safety or quality. That is not the case with Ergobaby."

30.     Ergobaby's advertisements conclude by comparing its baby carrier with Mabē's Monarch Carrier, stating that Ergobaby's carrier is superior in all respects:

 

31.     Ergobaby has disseminated these false and/or misleading representation through social media accounts using its brand ambassadors/influencers (the "Ergobaby Agents") who have a material connection with Ergobaby and are working on behalf of, at its discretion, and under its control. Ergobaby has sponsored and promoted this false and/or misleading information across social media outlets including platforms like Facebook, Instagram, and Threads.

32.     Upon information and belief, Ergobaby disseminated these false and/or misleading representations in retaliation for Mabē's filing for bond in the Patent Case.

COMPLAINT

33.     Upon information and belief, the advertisements discussed above ran from March 19, 2026 to at least May 11, 2026. And Ergobaby's smear campaign against Mabē continues. On April 23, 2026, Ergobaby posted on its Instagram account, a video depicting a frowning, disgruntled woman with a baby in a Monarch Carrier. The video's text overlay states "If your baby's legs look like this . . ." The video then changes to a depiction of that woman (now smiling) with a baby in an Ergobaby carrier. The video's text overlay at this point states "Fix it!"

 



34.    Ergobaby's Instagram video clearly refers to and concerns Mabē and Mabē's Monarch Carrier. The Monarch Carrier is identifiable and recognizable in the video from its distinct appearance, the Monarch butterfly wing embroidered on the carrier's waistband (Mabē owns a U.S. trademark registration for this distinctive design), and Mabē's popular Houndstooth fabric pattern. Instagram users viewing the video understand that the first carrier depicted is a competitor to Ergobaby, and, specifically, that it is Mabē's carrier, with one commenter even referencing Ergobaby's lawsuit against Mabē:

 **yourdoulagrace** ✓ 1w
Yalllll. This is so awkward. You're suing them. We see it. We get it. Chill. It's giving bad vibes.



thebabybrain_london 1w
This is really a use issue and not a carrier issue. It's a shame you're suggested yours is the only carrier than can achieve a good position, it's simply not true. Great to educate parents on usage, not to shame another brand for something fabricated to your advantage....



ginger5nap1980 2w
Well using another brand in your ads is icky ...

3 likes   Reply

35.    Ergobaby's Instagram video clearly and necessarily conveys that something is allegedly wrong with the Monarch Carrier; it misrepresents that the Monarch Carrier does not support proper hip placement and that Ergobaby's carriers can "fix" this purported problem. But the video does not reflect proper use of the Monarch Carrier in the front-facing position. When used properly, the Monarch Carrier ensures that the baby's weight is supported in the recommended "M" position. Indeed, several Instagram users noted the improper depiction of the Monarch Carrier in Ergobaby's video, with one user saying the video is "[b]asically borderline false advertisement" that lies to parents. *See* Ex. B.



wrapahug_sling_library  3w
Basically bordeline false advertisement, lying to parents and let's not forget how annoyed Ergo must have been when other brands did a similar thing using their carriers! This is not OK

26 likes   Reply

neneplusdrei 3w
The First Carrier is a very good one. Only in the wrong position.

7 likes   Reply

mummyrunsformedals 3w
The first one is an easy fix with a bum scoop to get the right shape. No need for a switch in carrier .

21 likes   Reply

baeredama 3w
I've seen plenty of babies with legs hanging in ergobabies, because of the forward facing option. so its not always about the carrier. Its about knowledge! How about focusing on positive posts about ergonomic, and safe babywearing!
Spread love and truth, not hate 💅 🎤

55 likes   Reply

wrapahug_sling_library ✔ 3w
you can easily make the seat wider with the 1st carrier or have the seat too narrow with the Deluxe, it's about very simple adjustments

51 likes   Reply

View all 1 replies

hayleykirkham7 2w
Actually you can fix that first one, the seat just needs adjusted. Just like the ergo is adjustable. It isn't always feasible for families to just buy a new one as your suggesting and I've seen poor fits in an ergo too. Mean girl energy isn't the vibe anymore....

10 likes   Reply

thebabybrain_london 3w
This is really a use issue and not a carrier issue. It's a shame you're suggested yours is the only carrier than can achieve a good position, it's simply not true. Great to educate parents on usage, not to shame another brand for something fabricated to your advantage....

83 likes   Reply

## COUNT I
### (False Advertising (15 U.S.C. § 1125(a)(1)(B))

36.    Mabē realleges and incorporates the previous paragraphs of this Complaint herein.

37.    Ergobaby, directly and through the Ergobaby Agents, has made, continues to make, and placed in interstate commerce in commercial advertising or promotion, false and/or misleading

descriptions of fact and false or misleading representations of fact that misrepresent the nature, characteristics, and qualities Mabē's goods, in violation of 15 U.S.C. § 1125(a)(1)(B).

38. The false claims in Ergobaby's advertisements, made by Ergobaby and/or the Ergobaby Agents, constitute false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39. The false claims in Ergobaby's advertisements, made by Ergobaby and/or the Ergobaby Agents, are literally false and/or misleading.

40. The false claims in Ergobaby's advertisements about the nature, characteristics, and quality/safety superiority of Defendant's baby carrier and the comparative nature, characteristics, and alleged quality/safety inferiority of Mabē's baby carrier have actually deceived or have a tendency to deceive a substantial segment of the intended audience for baby carriers.

41. Upon information and belief, the false claims in Ergobaby's advertisements, made by Ergobaby and/or Ergobaby's Agents, have influenced the purchasing decisions of baby carrier retailers and consumers throughout the United States because the claims relate to the nature, characteristics, and qualities of baby carriers.

42. As a direct and proximate result of the false claims in Ergobaby's advertisements, Mabē has been and continues to be injured, including through lost sales, lost market share, harm to goodwill, and irreparable harm to Mabē's reputation.

43. As a direct and proximate result of the acts of Ergobaby and/or Ergobaby's Agents, Mabē has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Ergobaby profits and/or attempts to profit at Mabē's expense.

44. Ergobaby's false and/or misleading advertising has caused and, unless enjoined, is likely to continue causing: (a) confusion, deception, and mistake among consumers of baby carriers, whose purchasing decisions are likely to be materially impacted by Ergobaby's false and/or misleading claims about the nature, characteristics, and qualities of its Mabē's products; (b) Mabē to suffer, as a direct and proximate effect of the false advertising, loss of goodwill and/or reputation, sales, and profits; (c) Ergobaby to unfairly enjoy sales and profits to which it is not entitled; and (d) irreparable harm to Mabē.

COMPLAINT

45.     Ergobaby's false and/or misleading statements are material and likely to influence decisions of baby carrier purchasers, dissuading them from purchasing Mabē's baby carrier and purchasing one of Ergobaby's baby carriers instead.

46.     Ergobaby's improper and unlawful activities are retaliatory, willful, and deliberate. Indeed, Ergobaby knew or reasonably should have known that the claims in Ergobaby's advertisements were false and/or misleading. Therefore, Ergobaby's false and/or misleading advertising was purposeful and merits a finding that exceptional circumstances exist sufficient to support an award of attorneys' fees, treble damages, and other relief permitted by law.

47.     Mabē has no adequate remedy at law for Ergobaby's continuing acts of false advertising.

48.     Ergobaby's conduct has directly and proximately caused damages to Mabē in an amount to be proven at trial.

### COUNT II
**(False Advertising – California Business & Professions Code § 17500 *et seq.*)**

49.     Mabē realleges and incorporates the previous paragraphs of this Complaint herein.

50.     Ergobaby, in advertising and promoting its baby carriers in the State of California, over the Internet, and elsewhere, has made and continues to make the false and/or misleading claims in Ergobaby's advertisements, or directed its Ergobaby Agents to make such statements which it then sponsored in advertisements, concerning the nature, characteristics, and qualities, of Mabē's baby carrier and comparative statements disparaging the nature, characteristics, and qualities of Mabē's baby carrier, that were untrue and/or misleading as set forth above.

51.     Ergobaby knew, or by the exercise of reasonable care should have known, that the claims in Ergobaby's advertisements were untrue or misleading, in violation of Cal. Bus. & Prof. Code § 17500 *et seq*.

52.     The false and/or misleading claims in Ergobaby's advertisements have caused and are causing damage and irreparable harm to Mabē in the form of lost profits, loss of market share, loss of sales, and harm to reputation and goodwill, which will continue if not enjoined.

COMPLAINT

53.    Ergobaby's conduct constitutes false advertising under Cal. Bus. & Prof. Code § 17500 *et seq*. Such false advertising has been done willfully with the intent to harm Mabē.

54.    Ergobaby has benefitted from the sale of its products to consumers who relied upon the untrue and misleading representations set forth herein.

**COUNT III**
**(Unfair Competition – California Business & Professions Code § 17200 *et seq*.)**

55.    Mabē realleges and incorporates the previous paragraphs of this Complaint herein.

56.    California's Unfair Competition Law ("UCL") defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

57.    Ergobaby's conduct, as outlined above, specifically, disseminating the false and/or misleading claims in Ergobaby's advertisements and sponsoring and/or directing the Ergobaby Agents to make the false and/or misleading claims, constitutes unlawful, unfair, and fraudulent business acts and practices under Cal. Bus. & Prof. Code § 17200 *et seq*., including false advertising and misleading statements, and unfair conduct that harms competition and consumers by making consumers and potential consumers doubt the proven safety and quality of Mabē's baby carrier.

58.    By virtue of the acts described herein, Ergobaby has intentionally misled and deceived consumers and the public and has unfairly competed with Mabē because the false and/or misleading claims in Ergobaby's advertisements were designed to harm Mabē's ability to compete.

59.    In making these representations, Ergobaby knew, or by the exercise of reasonable care should have known, that these statements were untrue or misleading and so acted in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.

60.    Ergobaby, by its actions, has irreparably injured Mabē. Such irreparable injury will continue unless Ergobaby is permanently enjoined by this Court from further violation of Mabē's rights, for which Mabē has no adequate remedy at law.

**COUNT IV**
**(Trade Libel)**

61.    Mabē realleges and incorporates the previous paragraphs of this Complaint herein.

18

62. Ergobaby, directly or through its Ergobaby Agents, disseminated, and continues to disseminate, false statements about Mabē and its baby carriers to consumers and potential customers as detailed above.

63. Ergobaby has intentionally made false statements, through the Internet and social media, to the public at wide, including Mabē's customers and potential customers, disparaging Mabē and its baby carriers.

64. These false and defamatory statements were made maliciously by Ergobaby, with the intent to disparage and derogate the quality and safety of Mabē's baby carriers, thereby misleading customers and potential customers. These false and defamatory statements play a material and substantial role in inducing customers not to purchase Mabē's baby carriers.

65. Ergobaby disseminated its false and defamatory statements with actual knowledge of their falsity, or acted with reckless disregard of their truth or falsity, so as to have acted with actual malice. Ergobaby intended for dissemination of its statements to result in harm to the interests of Mabē, and either recognized or should have recognized that the statements were likely to result in such harm.

66. The false and defamatory statements alleged herein caused both general and special damages to Mabē.

## JURY DEMAND

67. Pursuant to Federal Rule of Civil Procedure 38(b), Mabē hereby demands a trial by jury of on all claims.

## PRAYER FOR RELIEF

Wherefore, Mabē requests that this Court enter judgement in its favor on each and every claim for relief set forth above and award it relief, including but not limited to:

A. Judgment in favor of Mabē and against Ergobaby on each of Mabē's claims.

B. An Order declaring that Ergobaby's claims and statements, described above, constitute false advertising, unfair competition, and trade libel under federal, state, and/or common law, as detailed above.

COMPLAINT

C.   An order permanently enjoining Ergobaby, its agents, servants, affiliates, representatives, successors, assigns, the Ergobaby Agents, and all those persons or entities in active concert or participation with Ergobaby or the Ergobaby Agents:

1.   From disseminating, across any media, the false and/or misleading claims in Ergobaby's advertisements detailed herein, including but not limited to claims that overstate Ergobaby's alleged superiority in quality, safety, or otherwise, or disparage Mabē and its baby carriers;

2.   From making, across any media, any other false and/or misleading claims about Mabē's baby carriers, including but not limited to claims that falsely or misleadingly imply that Mabē's baby carriers are inferior to Ergobaby's, are not "newborn ready," are not adequate for newborns, are not safe, do not support proper hip placement for babies, or are of poor quality;

3.   To immediately recall and cease all sales which are or could be derived from such false and/or misleading representations;

4.   To publish appropriate corrective advertising;

5.   From assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (3) above.

D.   An order, pursuant to 15 U.S.C. § 1116(a), directing Ergobaby to file with the Court and serve upon Mabē, within thirty (30) days after entry of the injunctive order, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth herein.

E.   An Order requiring Ergobaby to pay Mabē damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

F.   An Order requiring Ergobaby to account for and pay to Mabē any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws;

COMPLAINT

G.      An Order requiring Ergobaby to pay Mabē all of Mabē's litigation expenses, including reasonable attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

H.      An Order granting an award of punitive and/or exemplary damages for the willful and wanton nature of Ergobaby's acts;

I.      An Order granting pre- and post-judgment interest on any recovery by Mabē; and

J.      Other relief as the Court may deem appropriate.

Dated:   May 15, 2026                              Respectfully submitted,

/s/ Morgan E. Smith
Morgan E. Smith, Esq. (SBN 293503)

morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Justin J. Hasford (*pro hac vice* to be filed)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel: (202) 408-4175
Fax: (202) 408-4400
Email: justin.hasford@finnegan.com

*Attorneys for Plaintiff Mabē, LLC*

COMPLAINT